```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                              :
UNITED STATES OF AMERICA      :     INDICTMENT
                              :     UNDER SEAL
        - v. -                :
                              :     12 Cr. 804
HAMID REZA HASHEMI and        :
MURAT TASKIRAN,               :
                              :
              Defendants.     :
                              :
------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 12-6-12

COUNT ONE

(Conspiracy to Violate the International
Emergency Economic Powers Act ("IEEPA"))

The Grand Jury charges:

OVERVIEW

1. Carbon fiber is a product that consists of thin fibers made of carbon atoms. Carbon fiber has a wide variety of industrial uses. For example, it can be used in aerospace engineering and it can be used in gas centrifuges that enrich uranium. Since carbon fiber has both military and non-military uses, it is typically characterized as a "dual use" commodity.

2. At all times relevant to the Indictment, HAMID REZA HASHEMI, the defendant, was a citizen of the United States who lived and worked in Iran. HASHEMI operated a company in Tehran, Iran (the "Iranian Company"), which procured, and attempted to procure, carbon fiber from various sales brokers.

3. At all times relevant to the Indictment, MURAT TASKIRAN, the defendant, was the Managing Director of a company in Turkey (the "Turkish Company"). In or about late 2007, TASKIRAN began assisting HAMID REZA HASHEMI, the defendant, with HASHEMI's efforts to purchase and obtain carbon fiber for the Iranian Company. TASKIRAN solicited carbon fiber from a United States broker of carbon fiber, who operated a business in Orange County, New York (the "United States Supplier").

4. The United States Supplier, in turn, contacted an individual ("Individual-1") regarding the request by MURAT TASKIRAN, the defendant. From late 2007 to late 2011, Individual-1 operated businesses in Europe that procured carbon fiber on behalf of various companies, including from locations in the United States.

5. In or about March and April 2008, Individual-1, MURAT TASKIRAN, the defendant, and HAMID REZA HASHEMI, the defendant, successfully arranged for the export/transshipment of carbon fiber from the United States to the Iranian Company in Iran. In doing so, Individual-1 purchased carbon fiber from the United States Supplier; arranged for the United States Supplier to export the carbon fiber from the United States to Europe; used a European freight forwarder to send the carbon fiber from Europe to Dubai, United Arab Emirates (the "UAE"); and then arranged for the carbon fiber to be sent from the UAE to Iran,

to the Iranian Company. At no point did the United States Supplier, HASHEMI, TASKIRAN, Individual-1, or anyone else involved in the transaction obtain permission from the United States Government to export this carbon fiber from the United States.

6. After Individual-1 successfully procured carbon fiber for HAMID REZA HASHEMI, the defendant, HASHEMI continued to communicate with Individual-1 about obtaining carbon fiber-related materials for the Iranian Company, including as recently as the fall of 2012.

## STATUTORY ALLEGATIONS

7. From at least in or about 2007, up to and including the present, HAMID REZA HASHEMI and MURAT TASKIRAN, the defendants, and others, known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Sections 1701 to 1706 of Title 50, United States Code, and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204.

8. It was a part and an object of the conspiracy that HAMID REZA HASHEMI and MURAT TASKIRAN, the defendants, and others known and unknown, willfully and knowingly, would and did export, cause to be exported, attempt to export, sell, and supply, directly and indirectly, from the United States to Iran, goods, technology, and services, to wit, carbon fiber and other

carbon fiber-related materials, without obtaining the required approval of the Office of Foreign Assets Control ("OFAC"), within the United States Department of Treasury, in violation of Sections 1701 to 1706 of Title 50, United States Code, and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204.

### Overt Acts

9.   In furtherance of the conspiracy and to effect the illegal object thereof, HAMID REZA HASHEMI and MURAT TASKIRAN, the defendants, and others, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On November 21, 2007, TASKIRAN sent an e-mail to the United States Supplier, seeking "intermediate modulus carbon fiber such as . . . IM7 [a type of carbon fiber available on the open market]."

b.   On December 4, 2007, Individual-1 received an e-mail from the United States Supplier, who had forwarded the above e-mail communication to Individual-1, and wrote "I simply want you to proceed as follows - [Individual-1's company] works with various US suppliers and hence you will be their direct contact."

c.   On December 5, 2007, Individual-1 sent an e-mail to TASKIRAN, which stated "[w]e can supply almost all kind

4

of carbon fiber from our plants in US" and indicated that these plants were in Atlanta.

        d. On January 24, 2008, Individual-1 sent an e-mail to TASKIRAN, which stated that Individual-1 believed TASKIRAN had a "very good opportunity to sell all kind of US products," including "carbon fiber," on the "Turkish Market."

        e. On January 24, 2008, TASKIRAN replied by e-mail to Individual-1 as follows: "Our customer gave me confirmation for IM7 But he will re-sell to iran for cng tank production.but of course we can increase price."

        f. On January 25, 2008, in response to Individual-1's request, TASKIRAN sent an e-mail to Individual-1 that identified the Iranian Company as the end user of the carbon fiber and listed the contact at the Iranian Company as HASHEMI, whom TASKIRAN referenced in the e-mail as "dr. Hamid Hashemi."

        g. On February 21, 2008, TASKIRAN, sent an e-mail to Individual-1 that attached proof of a wire transfer to Individual-1, and which said, "This is swift from the bank. Pls proceed the shipment in US."

        h. On February 22, 2008, Individual-1 arranged for a wire transfer in the amount of approximately $28,170 from Europe to a United States bank account belonging to the United States Supplier.

        i.    On March 10, 2008, Individual-1 sent an e-mail to TASKIRAN that said, "FOR FUTURE SHIPMENT I SHOULD USE MY DUBAI COMPANY AS DESTINATION. EUROPE IS VERY TOUGH ON [the Iranian Company] DESTINATION AND NEARLY IMPOSSIBLE. I CAN USE MY FORWADING CUSTOM AGENT TO DELIVER THE GOODS IN TEHRAN BUT OFCOURSE [the Iranian Company] SHOULD PAY FOR THIS SERVICE."

        j.    In mid-March 2008, Individual-1 caused the United States Supplier to arrange for the export of carbon fiber from the United States to Europe.

        k.    In mid-March 2008, Individual-1 arranged for the transshipment of the carbon fiber referenced in paragraph 9(j) above from Europe to Dubai, UAE.

        l.    In mid-April 2008, Individual-1 arranged for the transshipment of carbon fiber referenced in paragraph 9(k) above from the UAE to the Iranian Company in Iran.

        m.    On June 4, 2008, TASKIRAN, sent an e-mail to HASHEMI, which bore the subject line "payment" and which referenced their "agreement" about the shipment of carbon fiber to Iran. TASKIRAN wrote that "due to restrictions i sent this fiber through Europe. . . . And we bring the fiber up to Tehran." TASKIRAN asked HASHEMI "to make payment . . . very PROMTLY."

        n.    On June 5, 2008, HASHEMI responded to TASKIRAN's June 4 e-mail by writing in an e-mail to TASKIRAN

that HASHEMI "will try to take care of it soon after we go back to work."

   o.  On or about June 5, 2008, TASKIRAN forwarded the June 5, 2008 e-mail response (referenced in paragraph 9(m)) to Individual-1, and wrote that that while HASHEMI's partner "take care financial issues," "Hamid [referring to HASHEMI] has knowledge and experince about composites and he take care technical issues. but as Hamid speaks English very well, i contact with Hamid always."

   p.  On June 12, 2008, Individual-1 sent an e-mail to TASKIRAN about another shipment of carbon fiber, which e-mail stated, "Please note that the shipment will be from USA to Turkey directly."

   q.  On June 12, 2008, TASKIRAN sent an e-mail to Individual-1 asking, "Isn't it possible to ship from USA to Pakistan to reduce shipping cost?"

   r.  On June 18, 2008, TASKIRAN sent an e-mail to Individual-1 that advised Individual-1 that a shipment of carbon fiber was destined "for iran. but they will take it from Turkey."

   s.  On June 18, 2008, Individual-1 sent an e-mail to TASKIRAN, which stated that the price for carbon fiber could not be lower because "It is US made."

7

t. On or about July 19, 2008, Individual-1 sent an e-mail to HASHEMI, which stated, "Dear Dr. Hashemi, regarding prepreg [a type of carbon fiber] I can provide you 2 types as follow . . . Prepreg made by a company in USA but not [a specific company ("Company 1") . The spec sheet 100% same as Company 1 . . . price 70 Euro/kg. . . . 12k IM7 Company 1 (same as delivered you) 1500 kg stock in Antwerp."

u. On May 6, 2009, Individual-1 sent an e-mail to HASHEMI about a carbon fiber order, as follows, "Price 75Euro/Kg delivery TEH . availability 2500Kg Max."

v. On May 6, 2009, HASHEMI sent an e-mail to Individual-1, which stated that HASHEMI was in receipt of the samples Individual-1 had sent and that "we are carrying on with our tests on the samples you have kindly sent and will come back to you."

w. On May 19, 2009, HASHEMI sent an e-mail to Individual-1, which stated that HASHEMI would like to "proceed with ordering the 1500 kg of goods to be delivered perhaps by the time you arrive here [in Tehran, Iran]."

x. On May 24, 2009, Individual-1 sent an e-mail to HASHEMI, which stated, "Dear Dr. Hashemi, Pursuant my last Tel call please consider following: 1. The price of T5000 Tension meter is 9670Euro Delivered you . It will be sent to Europe , UAE and to You by DHL."

y.   On May 27, 2009, HASHEMI sent an e-mail to Individual-1 that attached a proposed contract for the carbon fiber transaction referenced in paragraphs 9(u) to (x) above, and that stated, "if acceptable to you sign and fax it back to our office no. [fax number]."

z.   On July 6, 2009, Individual-1 arranged for a wire transfer in the amount of approximately $43,738.38 from Europe to the United States bank account for the United States Supplier.

aa.   On or about July 27, 2009, Individual-1 caused the United States Supplier to arrange for the export of approximately 3095 kilograms of carbon fiber from the United States to a company located in the United Kingdom (the "UK Company").

bb.   On July 29, 2009, Individual-1 received an e-mail from a representative of the UK Company, which stated, "We can ship to Dubai with no problem."

cc.   On or about December 3, 2011, HASHEMI sent a text message to Individual-1, which stated, "Offer him IM7 12k."

dd.   On or about June 11, 2012, HASHEMI sent a text message to Individual-1, expressing interest in purchasing a carbon fiber winding machine from the United States.

ee. On or about June 14, 2012, HASHEMI sent an e-mail to Individual-1, which set forth the specifications of the winding machine he sought.

ff. On or about July 17, 2012, HASHEMI sent an e-mail to Individual-1, which said that HASHEMI intended to travel to the United States to see the winding machine.

(Title 50, United States Code, Section 1705.)

## COUNT TWO

### (IEEPA)

The Grand Jury further charges:

10. The allegations set forth in paragraphs 1 through 9 are repeated and realleged as if set forth fully herein.

11. From at least in or about 2007 to in or about 2008, HAMID REZA HASHEMI and MURAT TASKIRAN, the defendants, in the Southern District of New York and elsewhere, willfully and knowingly, did export, cause to be exported, attempt to export, sell, and supply, directly and indirectly, from the United States, goods, technology, and services, to wit, carbon fiber, to Iran, without obtaining the required approval from OFAC.

(Title 18, United States Code, Section 2;
Title 50, United States Code, Section 1705; Title 31, Code of
Federal Regulations, Sections 560.203, 560.204.)

COUNT THREE

(IEEPA)

The Grand Jury further charges:

12. The allegations set forth in paragraphs 1 through 9 are repeated and realleged as if set forth fully herein.

13. From at least in or about 2008 to in or about August 2009, HAMID REZA HASHEMI, the defendant, in the Southern District of New York and elsewhere, willfully and knowingly, did export, cause to be exported, attempt to export, sell, and supply, directly and indirectly, from the United States, goods, technology, and services, to wit, carbon fiber, to Iran, without obtaining the required approval from OFAC.

(Title 18, United States Code, Section 2;
Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Sections 560.203, 560.204.)

Forfeiture Allegation

14. As a result of committing one or more of the offenses alleged in Counts One through Three of this Indictment, HAMID REZA HASHEMI and MURAT TASKIRAN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Three,

including but not limited to a sum of money representing the amount of proceeds obtained as a result of the offenses.

### Substitute Assets Provision

15. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third person;

    (3) has been placed beyond the jurisdiction of the court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney